MARK WINDSOR (No. 190589)
16 North Marengo Street, Suite 300
Pasadena, California 91101
Telephone (626) 792-6700
Facsimile (213) 232-3609
windsorlaw@gmail.com
Attorney for Defendant, Hayrapet Avetisyan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 10-CR-00299-MMM |
| Plaintiff, | **REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT HAYRAPET AVETISYAN'S MOTION TO DISMISS THE INDICTMENT** |
| v. | |
| SAAK AVAKYANTS, et. al. | DATE: AUGUST 30, 2010 |
| Defendants. | TIME: 1:15 PM |

PLEASE TAKE NOTICE that Defendant, HAYRAPET AVETISYAN, by and through his counsel Mark Windsor, hereby replies to the government's response to his motion to dismiss the indictment. This motion is based on the arguments below and upon such other items that may be presented to this Court before the hearing and at the hearing on this matter.

//

//

1

I.      INTRODUCTION

On August 9, 2010, Mr. Avetisyan filed a motion requesting that the Court partially dismiss Count One and dismiss Count Nineteen of the indictment where the indictment failed to allege a violation of the Hazardous Materials Regulation Act ("HMTA"). Count One, in part, alleges that Mr. Avetisyan conspired to willfully and recklessly violate HTMA regulations in violation of 49 U.S.C. § 5124. Count Nineteen alleges that Mr. Avetisyan willfully and recklessly violated HTMA regulations in violation of 49 U.S.C. § 5124. In particular, these counts allege that Mr. Avetisyan failed to place placards on a motor vehicle that he used to transport gasoline in violation of 49 C.F.R. §§ 172.504, 172.532, 172.542. Regulation 172.504 requires that all bulk packagings, freight containers, unit load devices, transport vehicles, and rail cars containing any quantity of hazardous material have placards on each side and each end. 49 C.F.R. § 172.504. Regulations 172.532 and 172.542 provide pictures of the type of placards that must be displayed for transportation of flammable gas and liquid. 49 C.F.R. §§ 172.532, 172.542. In his motion to dismiss, Mr. Avetisyan argued that the indictment fails to sufficiently allege that the van that he used to transport the gasoline was a "transport vehicle," and failed to sufficiently allege that the container in the van holding the gasoline was a "bulk packaging," for the purposes of the HMTA. Mr. Avetisyan requested that the Court dismiss the counts in the indictment that allege that he violated 49 U.S.C. § 5124.

On August 16, 2010, the government filed a response to the motion. (Docket Entry 93). The government argued that the indictment states sufficient facts to describe

criminal conduct under 49 U.S.C. § 5124.  First, the government pointed out that the indictment tracks the language of 49 U.S.C. § 5124 by alleging that Mr. Avetisyan violated regulations promulgated under the HMTA, and that he violated those regulations willfully and recklessly.  Second, the government argued that the indictment alleges a violation of Regulation 172.504 where the motor vehicle is a transport vehicle.  Third, the government argued that the indictment also alleges a violation of Regulation 172.504 where the modified gas tank on the van is a bulk packaging.  Mr. Avetisyan concedes that the indictment tracks the language of 49 U.S.C. § 5124 alleging a violation under that statute.  However, the indictment fails to allege that Mr. Avetisyan violated Regulations 172.504, 172.532, and 172.542 under the HMTA.  Therefore, the Court may dismiss Count One, in part, and Count Nineteen of the indictment despite the government's arguments.

II.   ANALYSIS

A.   THE INDICTMENT DOES NOT ALLEGE THAT MR. AVETISYAN USED A TRANSPORT VEHICLE TO TRANSPORT THE GASOLINE WHERE THAT VEHICLE MUST BE "CARGO-CARRYING" OR "USED FOR THE TRANSPORTATION OF CARGO."

In its response, the government argues that the indictment sufficiently alleges that Mr. Avetisyan used a transport vehicle to carry the gasoline.  Regulation 171.8 defines "transport vehicle" as a "cargo-carrying vehicle such as an automobile, van, tractor, truck, semitrailer, tank car or rail car used for the transportation of cargo by any mode." 49 C.F.R. § 171.8.  The government concludes that the indictment sufficiently alleges that Mr. Avetisyan used a transport vehicle where it states that he drove a van that was

modified to transport gasoline. (Docket Entry 93, at 6). While the indictment does allege that Mr. Avetisyan shipped the gasoline with a "van," the indictment fails to allege that the van that he used was "cargo-carrying" or "used for the transportation of cargo." Ultimately, the indictment does not allege that Mr. Avetisyan drove the type of "cargo-carrying" vehicle that requires placards under the HMTA.

> **1. NEITHER CONGRESS NOR THE DEPARTMENT OF TRANSPORTATION INTENDED FOR THE PLACARDING REQUIREMENTS TO APPLY TO THE TYPE OF VEHICLE THAT THE GOVERNMENT ALLEGES IN THE INDICTMENT.**

A plain reading of the definition of "transport vehicle" does not reveal when a motor vehicle may be considered to be "cargo-carrying" or "used for the transportation of cargo." 49 C.F.R. § 172.8. The HMTA does not define the terms "cargo" or "cargo-carrying." Similarly, courts have not defined the terms "transport vehicle" or "cargo-carrying" vehicles, when interpreting the HMTA. When interpreting a statute, courts generally first consider the plain meaning of the statute's text. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). Courts may construe provisions of the entire law, including its object and policy, to determine the intent of Congress. *United States v. Boren*, 278 F.3d 911, 914-15 (9th Cir. 2002). When a statute is ambiguous, courts may also look to both the construction of the statute and the legislative history of the statute to determine how Congress intended the statute to be interpreted. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999). In the same way, a regulation may be interpreted in light of the its construction and the legislative history of the statute it implements. *See, e.g., Omohundro v. United States*, 300 F.3d 1065, 1068 (9th Cir. 2002) (relying on the

legislative history of the Internal Revenue Code to interpret a regulation implemented by the Internal Revenue Service); *United States v. Hagberg*, 207 F.3d 569, 572-75 (9th Cir. 2000) (relying on legislative history underlying a regulation to resolve an ambiguity in that regulation); *Resnik v. Swartz*, 303 F.3d 147, 152 (noting that the rules of statutory construction may also apply to the interpretation of regulations). Where the legislative history of the HMTA and construction of Regulation 172.504 show that the placarding requirements do not apply to the van alleged in the indictment, the indictment fails to allege that Mr. Avetisyan violated the Act.

        **a.**    **THE LEGISLATIVE HISTORY OF THE HMTA SHOWS THAT CONGRESS INTENDED FOR THE TERMS "CARGO-CARRYING" AND "USED FOR THE TRANSPORTATION OF CARGO" LIKELY TO DESCRIBE A LARGE INDUSTRIAL VAN.**

In 1975, Congress passed the HMTA after a series of accidents involving hazardous materials, including the explosion of a chemical shipment at a railroad yard in Washington state that killed two people and injured 113. *To Amend the Hazardous Materials Transportation Act To Authorize Appropriations, and For Other Purposes: Hearing on S. 2991 Before the S. Subcomm. on Surface Transportation*, 94th Cong. 1-3 (1976) (statement of Warren Magnuson, Chairman, Committee on Commerce). Congress authorized the Department of Transportation to create regulations that would apply to shippers and carriers of hazardous materials, and manufacturers of containers used for hazardous materials. S. Rep. No. 101-449, at 2 (1990); *see also* Advisory Guidance: Offering, Accepting, and Transporting Hazardous Materials, 61 Fed. Reg. 30444 (June 14, 1996) (stating that the regulations promulgated under the HMTA apply to offerors,

carriers, packaging manufacturers, reconditioners, testers, and retesters).  In subsequent years, Congress conducted hearings and consulted with representatives in the transportation industry, transportation labor organizations, and equipment manufacturers to determine the effectiveness of the HMTA.  S. Rep. No. 101-449, at 3 (1990) (detailing hearings held by the Committee on Commerce during the 100th Congress with panels representing local officials, industry, shippers, and carriers); *see also Reauthorization of the Hazardous Materials Transportation Uniform Safety Act of 1990: Hearing Before the Subcommittee on Surface Transportation*, S. Hrg. 103-309 (1993) (conducting hearings to determine whether to reauthorize the safety programs carried out by the Department of Transportation and receiving testimony from representatives of the American Trucking Associations, National Industrial Transportation League, National Tank Truck Carriers, among others).  These hearings and the general discussion surrounding the HMTA in the Congressional Record focus on large scale transportation of hazardous materials.  They also reveal that Congress intended for the HMTA to apply to shippers and carriers who transport large amounts of hazardous materials with industrial sized vehicles.  There is no indication on the record that Congress intended to impose the laws and regulations of the HMTA on just any type of van, especially a passenger van.

      **b.**    **RULES OF CONSTRUCTION SHOW THAT THE DEPARTMENT OF TRANSPORTATION ALSO INTENDED THAT THE TERMS "CARGO-CARRYING" AND "USED FOR THE TRANSPORTATION CARGO" REFER TO A LARGE INDUSTRIAL VAN.**

      The canon of construction, *noscitur a sociis*, states that words grouped in a list should be given related meaning.  *Dole v. United Steelworkers of America*, 494 U.S. 26,

6

36 (1990); *United States v. Belless*, 338 F.3d 1063, 1068 (9th Cir. 2003). Regulation 172.504 lists the following types of vehicles or containers requiring placards: bulk packaging, freight container, unit load device, transport vehicle, and rail car. 49 C.F.R. § 172.504. Where the definition of "transport vehicle" is ambiguous, the definitions of the other terms listed may provide some clarification. Both bulk packagings and freight containers are used to contain large amounts of hazardous materials. 49 C.F.R. § 172.8. A unit load device is a machine used to load large amounts of hazardous materials in bulk packagings or pallets onto transportation vehicles. 49 C.F.R. § 172.8. A rail car is a car designed to carry freight by rail. 49 C.F.R. § 172.8. All of these vehicles and containers requiring placards are used in the transportation industry to haul large quantities of hazardous materials from one location to another. More importantly, they are terms of art specific to the transportation industry, and are only used by those in that industry. When viewed together with these terms, a "transport vehicle" under Regulation 172.504 clearly refers to an industrial van that carries large shipments of cargo in containers or pallets. There is no support for the position that the Department of Transportation intended for the term to be more broadly interpreted to include all types of vans or motor vehicles. Common sense, practical implementation, and the available record all indicate otherwise.

      **c.**      **THE INDICTMENT DOES NOT ALLEGE THAT MR. AVETISYAN DROVE A "CARGO-CARRYING" VAN TO TRANSPORT THE GASOLINE FROM ONE STATION TO ANOTHER.**

The indictment alleges that Mr. Avakyants "modif[ied] motor vehicles, namely, vans, so that such vans would contain a concealed gasoline storage tank." (Docket Entry

7

35, at 3). Mr. Avetisyan and his co-defendants allegedly "dr[ove] the modified vans from gas station to gas station, filling the vans' concealed storage tanks with hundreds of gallons of gasoline." (Docket Entry 35, at 4). In particular, Overt Acts 15 through 19 of Count One and Count Nineteen allege that Mr. Avetisyan and Mr. Avakyants agreed to purchase gasoline at one station and transport it to another. (Docket Entry 35, at 6-7). Mr. Avetisyan allegedly filled a modified tank in a van with two purchases of gasoline of $125.00 each, and then drove the van to another gas station. (Docket Entry 35, at 6-7, 12). In its response, the government argues that the indictment is sufficient where it "alleg[es] defendant Avetisyan drove a van that defendant Avakyants modified to transport gasoline." (Docket Entry 93, at 6).

However, Regulation 172.504 imposes placarding requirements on not just any type of van. Regulation 172.504 imposes those requirements on a transport vehicle which is a "*cargo-carrying* vehicle, such as a . . . van . . . *used for the transportation of cargo* by any mode." 49 C.F.R. 172.8. As explained above, the legislative history of the HMTA and the construction of Regulation 172.504 show that the Act was meant to apply to cargo-carrying vehicles involved in large scale transportation. The indictment is completely silent as to how big the modified gas tank was on the van or the type of van used. Without alleging the size of the tank or the type of vehicle driven in more detail, the indictment fails to distinguish between a passenger van and a van used for the transportation of cargo. The government argues that it is sufficient merely to allege that the van has a modified tank and the tank carries gasoline. (Docket Entry 93, at 6). However, the type of van, the size of the modified tank, and the amount of the hazardous

materials transported are all essential elements of Regulation 172.504. *See* 49 C.F.R. § 172.504(c)(1) (exempting placarding requirements for transport vehicles containing less than 454 kilograms (1001 pounds) aggregate gross weight of hazardous materials); 49 C.F.R. § 172.500(3), (6) (exempting placarding requirements for hazardous materials packaged as small quantities and combustible liquids in non-bulk packagings). Without more specificity, the indictment fails to allege that Mr. Avetisyan used a transport vehicle without placards in violation of Regulation 172.504.

**B.    THE INDICTMENT ALSO FAILS TO SUFFICIENTLY ALLEGE THAT MR. AVETISYAN TRANSPORTED THE GASOLINE IN A BULK PACKAGING WHERE THE INDICTMENT DOES NOT ALLEGE THE SIZE OF THE MODIFIED GAS TANK.**

The government argues that the indictment sufficiently alleges that Mr. Avetisyan transported the gasoline in a bulk packaging. (Docket Entry 93, at 6). The Department of Transportation defines a "bulk packaging" as "a packaging, other than a vessel or a barge, including a transport vehicle or freight container, in which hazardous materials are loaded with no intermediate form of containment and which has . . . a maximum capacity greater than 450 L (119 gallons) as a receptacle for a liquid." 49 C.F.R. § 171.8. The government points to paragraph 7(c) of the indictment to show that the indictment alleges that Mr. Avetisyan transported the gasoline in a bulk packaging. (Docket Entry 93, at 6). Paragraph 7(c) of the indictment states: "[defendants] would drive the modified vans from gas station to gas station, filling the vans' concealed storage tanks with hundreds of gallons of gasoline." (Docket Entry 35, at 3-4). Even though the indictment does not allege the maximum capacity of the modified gas tank that Mr. Avetisyan used to

transport the gas, the government argues that it is sufficient to more generally state that the conspiracy as a whole transported hundreds of gallons of gasoline.

It cannot be deduced from paragraph 7(c) of the indictment that the maximum capacity of the modified gas tank was hundreds of gallons of gasoline. Paragraph 7(c) alleges more generally that the defendants drove from gas station to gas station and collectively pumped hundreds of gallons of gasoline. (Docket Entry 35, at 3-4). These hundreds of gallons of gasoline are alleged to have been pumped over the course of the conspiracy, beginning on an unknown date until March 11, 2010. (Docket Entry 35, at 2). Furthermore, the indictment alleges that each defendant pumped gasoline on separate dates at separate locations, sometimes with the assistance of Mr. Avakyants. In other words, these hundreds of gallons of gasoline were not pumped on the same day during the same incident. In fact, the indictment states that Mr. Avetisyan only pumped gasoline twice during the whole conspiracy, purchasing $125.00 worth on each pump. Where Mr. Avetisyan was the only defendant who allegedly pumped gas on December 8, 2009, and the gas purchased amounted to $250.00, it is not possible to deduce that the container carrying that gas had a maximum capacity of at least 119 gallons.

The government argues that, even though the indictment does not specify the maximum capacity of the modified gas tank, the indictment is not deficient because the government does not have to allege in the indictment its theory of the case or supporting evidence. (Docket Entry 93, at 7). However, similar to other criminal charges where quantity is an essential element, the government at the very least must allege a specific threshold quantity involved. *See, e.g. United States v. Young*, 609 F.3d 348, 356 (4th Cir.

2010) (requiring an indictment for an aggravated drug charge to allege a threshold quantity). Where the indictment fails to allege, at the very least, that the modified gas tank in the van that Mr. Avetisyan allegedly used to transport the gasoline has a maximum capacity greater than 119 gallons, the indictment does not allege that Mr. Avetisyan used a bulk packaging to transport the gasoline.

### III.   CONCLUSION

Ultimately, the indictment does not sufficiently allege that Mr. Avetisyan used a transport vehicle to move the gasoline from one gas station to another. The indictment fails to specify that the van that Mr. Avestiyan used was "cargo-carrying" or the type "used for the transportation of cargo." The indictment also does not sufficiently allege that Mr. Avetisyan used a bulk packaging to transport the gasoline, where the indictment does not specify the maximum capacity of the modified gas tank in the van. Since the indictment fails to allege that Mr. Avetisyan used a "transport vehicle" or "bulk packaging," the indictment does not allege that Mr. Avetisyan violated 49 C.F.R. § 172.504. To allege a violation of 49 U.S.C. § 5124, the indictment must allege that Mr. Avetisyan violated a regulation promulgated under the HMTA. Where the indictment fails to do so, the Court may dismiss Count One, in part, and Count Nineteen.

Respectfully submitted,

DATED:     AUGUST 18, 2010

_____/s/_____
MARK WINDSOR
Attorney for Hayrapet Avetisyan